# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**JAMEEL TABOR**,

    Petitioner,

v.                                                    Civil Action No. 2:18-CV-86
                                                     (Judge Bailey)

**FREDERICK ENTZEL, Warden,**

    Respondent.

## ORDER DISMISSING PETITION

This case is now before the Court for consideration of the Respondent's Motion to Dismiss or, Alternatively, Motion for Summary Judgment [Doc. 17], filed March 8, 2019. On August 29, 2018, petitioner filed his § 2241 petition [Doc. 1]. Therein, he asserts one (1) ground for relief. Subsequent to the instant Motion, this Court issued a ***Roseboro*** Notice [Doc. 18] informing the petitioner of his right and obligation to file a response within twenty-one (21) days of the Order, and cautioned him that failure to so respond may result in entry of a dismissal order. Petitioner failed to respond, and the time to do so has since expired. For the reasons that follow, the § 2241 petition is **DISMISSED**.

## Legal Standards

A.    Motion to Dismiss

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also* ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the

***Twombly*** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555, upheld the dismissal of a Complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 570. Although courts are to liberally construe *pro se* pleadings, *pro se* pleadings are not exempt from "***Twombly's*** requirement that a pleading contain more than labels and conclusions." ***Giarratano***, 521 F.3d at 304 n.5.

B.  Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue exists "if the evidence is such that a

---

[1] FED. R. CIV. P. 56(c); *see* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).

2

reasonable jury could return a verdict for the non-moving party."[2] Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[3]

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."[4] That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.[5] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

A *pro se* party's pleadings are generally construed more liberally and held to a less stringent standard than pleadings drafted by an attorney. See **Hughes v. Rowe**, 449 U.S. 5, 9 (1980). However, even under that deferential standard, this Court can "pierce the veil of a complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." **Neitzke v. Williams**, 490 U.S. 319, 327 (1989).

---

[2] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986).

[3] **Anderson**, 477 U.S. at 250.

[4] **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).

[5] Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248.

[6] **Anderson**, 477 U.S. at 249 (citations omitted).

### A. Due Process Requirements

In Ground One, petitioner asserts "BOP staff failed to follow it's [sic] own policy and violated my rights to due process." [Doc. 1 at 10]. In support, petitioner avers as follows: "BOP staff failed to properly follow policy when they conducted my disciplinary proceedings, they provided one report late and failed to provide the other report at all. These actions violate policy and also my rights, and my convictions must be thrown out." Id. The petitioner was charged in two incidents. On December 16, 2017, while at FCI Gilmer, he was charged with a Code 113 prohibited offense of "Making, Possessing, or Using Intoxicants," incident report, No. 3067750. Incident report 3114229 charged petitioner with a Code 111A violation – "Introduction of Drugs or Narcotics (Attempted)," and a Code 197 – "Phone Abuse-Criminal." The DHO sanctioned petitioner a forty-one (41) day disallowance of Good Conduct Time, thirty (30) days in disciplinary segregation, forfeiture of fifty (50) days non-vested Good Conduct Time, and a one (1) year loss of commissary, email, telephone, and visiting privileges. As relief, the petitioner seeks to expunge the incident reports and to restore his good time credits, his privileges, and that his custody classification be properly re-calculated.

The Supreme Court has identified the following due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if illiterate or the hearing involves

4

a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; and (5) the decision-maker must be impartial. *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974).

First, despite the petitioner's claims, he was clearly provided with notice of the charges at least twenty-four hours before his February 7, 2018, disciplinary hearing by receiving written notice on December 16, 2017. See Exh. 1, Gyurke Decl., Attachment C (Incident Report No. 3067750) and Attachment F. Second, the statement has a detailed description of the evidence taken directly from the Incident Report. Id. at Attachment C. Third, the petitioner was given the opportunity to call witnesses and present evidence, but the petitioner declined. Id. at Attachment D. Fourth, the petitioner was provided the opportunity to have a representative at the hearing. Id. at Attachments D & F. Finally, the petitioner does not allege – and no evidence shows – that the decision-maker was not impartial. Thus, it is apparent that the BOP provided the petitioner with adequate procedural due process pursuant to *Wolff*.

As to Incident Report No. 3114229, petitioner was clearly provided with notice of the charges at least twenty-four hours before his July 19, 2018, disciplinary hearing by receiving written notice on May 25, 2018. See Exh. 1, Gyurke Decl., Attachment G (Incident Report No. 3114229). Second, the statement has a detailed description of the evidence taken directly from the Incident Report. Id. Third, the petitioner was offered and accepted the opportunity to call witnesses and present evidence. Id. at Attachments H & J. Fourth, the petitioner was provided a representative at the hearing. Id. Finally, the petitioner does not allege – and no evidence shows – that the decision-maker was not

impartial.

### B. Timeliness of DHO Report

Petitioner Tabor also argues that the BOP violated policy because the written reports from these DHO hearings were not delivered to him in a timely manner. This argument fails.

Following a disciplinary hearing, BOP policy requires the DHO to provide the inmate with a written report, *ordinarily* within fifteen (15) working days after the DHO makes his or her decision. Therefore, the policy does not mandate that the inmate receive the report within fifteen (15) days or within any specified time. The BOP administrative grievance process requires an inmate to file an administrative appeal with twenty (20) days after the inmate receives the written report, rather than twenty (20) days after the disciplinary hearing as alleged. Accordingly, that the petitioner did not receive the written report within twenty (20) days after the respective DHO hearings, which did not interfere with his seeking administrative relief or otherwise prejudice him, did not violate the process due to an inmate challenging disciplinary actions under **Wolff v. McDonnell**, 418 U.S. 539. In addition, as the respondent points out, any alleged delay in providing a written report simply does not warrant habeas relief. See **Gaston v. Taylor**, 946 F.2d 340, 343 (4th Cir. 1991).

### C. Security Classification

Petitioner also requests his custody classification be recalculated. Federal prisoners, however, have no constitutional right to have a specific custodial security classification. **Moody v. Daggett**, 429 U.S. 78, 88 n.9 (1976). Addressing the alleged Fifth Amendment violation, precedent is clear prisoners have no constitutional right to be in

6

general population or housed in specific prisons. *See, e.g.*, *Id.*; ***Beveratti v. Smith***, 120 F.3d 500, 503–04 (4th Cir. 1997). In order for inmate housing to implicate a Due Process right, it must "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," ***Sandin v. Conner***, 515 U.S. 472, 484 (1995), and being housed in segregation, by itself, is not an atypical hardship. *See **Beveratti***, 120 F.3d at 503 (holding that administrative segregation for six months with vermin, human waste, flooded toilet, unbearable heat, cold food, dirty clothing, no outside recreation, and no education did not constitute atypical as to impose a significant hardship). Additionally, any complaint of a change in security or custody classification cannot establish a constitutional violation because "prison officials can change an inmate's classification for almost any reason or no reason at all." ***Brown v. Ratledge***, 2017 WL 4404248, at *7 (W.D. Va. Sept. 29, 2017), *aff'd*, 709 F. App'x 215 (4th Cir. 2018).

Again, petitioner has not made any showing that the DHO decision has created an atypical hardship. Nor has he stated a cognizable claim for any constitutional right to a specific security classification. Accordingly, this claim is denied.

### D. Sufficiency of Evidence

"[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." ***Superintendent, Mass. Corr. Inst., Walpole v. Hill***, 472 U.S. 445, 455 (1985). The standard is satisfied if there is some evidence supporting the conclusion reached by the disciplinary board. *Id*. In ***Hill***, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate. The prison disciplinary board's conclusion was supported by

little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." *Hill*, 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457

In the instant case, the DHO specified what evidence he relied on in reaching his conclusion. Specifically, the DHO stated that he relied on the statement of the reporting officer describing his discovery of a clear bag containing fruit and red liquid, wrapped in sheets and blankets, in the property of petitioner. See Ex. 1, Gyurke Decl., Attachment J. The DHO cited that the reporting officer conducted a test with the Alco-Sensor, which revealed a reading of greater than .400. The DHO further relied on the petitioner's own admission that the bag and its contents belonged to him.

With regard to Incident Report No. 3114229, the DHO cited evidence of petitioner's scheme to direct a visitor to procure, apply, and introduce synthetic drugs into the institution via misuse of the telephone procedures. In his decision, the DHO relied upon the statement of the reporting officer; the four page letter addressed to "Ms. Camille Burton" from "Mr. Burton;" the four pages of photographs; a two page TruView inmate center report showing money received and visits for the petitioner; a four page written statement submitted by the petitioner during the hearing; the SIS investigative report of May 2, 2018;

8

and the SENTRY printout showing inmate names associated with the petitioner. Id. at Attachment J. The DHO further considered the petitioner's defense in which he claimed that the "Camille Burton" he communicated with was a different individual than Tiffany Taylor, but also noted that evidence supported the conclusion that they were in fact one in the same person. Mail addresses and phone records supported the same. Records also show petitioner used the mail and phone to advise Taylor/Burton to procure, apply, and smuggle synthetic drugs into the prison. His arguments simply lack merit. Accordingly, the same are **DISMISSED**.

## Conclusion

Upon careful review of the above, it is the opinion of this Court that the respondent's Motion to Dismiss or, Alternatively, for Summary Judgment **[Doc. 17]**, should be, and is, hereby **GRANTED**. Accordingly, the § 2241 petition **[Doc. 1]** is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. This Court further **DIRECTS** the Clerk to enter judgment in favor of the respondent and to **STRIKE** this case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** July 15, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE